IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 4:22CR37 (RCY) |
| | ) | |
| JONATHAN C. LONG, | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Jonathan C. Long's Motion to Suppress (ECF No. 38). On October 13, 2022, the Court held a hearing on Defendant's Motion to Suppress and denied such motion from the bench at the conclusion of the hearing. This Memorandum Opinion sets forth the Court's reasons for its decision.

### I. Procedural History

On May 9, 2022, Defendant Jonathan Long and co-defendant Quaneshia Saunders were indicted on four counts: Possession with Intent to Distribute 40 Grams or More of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A); Possession of a Firearm by a Felon, in violation of 18 U.S.C. § 922(g)(1); and Maintaining a Drug Premises, in violation of 21 U.S.C. § 856. Defendant made his initial appearance on June 15, 2022, and was ordered detained after a hearing on June 21, 2022. He was then arraigned before Magistrate Judge Lawrence Leonard on June 21, 2022, and pled not guilty to all counts. (ECF Nos. 24, 29-30.)

On August 28, 2022, Defendant Long filed a Motion to Suppress and memorandum in support (ECF Nos. 38-39). The Government filed its opposition to the Motion on September 28, 2022 (ECF No. 47), and Defendant Long filed a reply the following day (ECF No. 48). As noted

1

above, on October 13, 2022, the Court held a hearing on Defendant's Motion to Suppress and denied such Motion from the bench at the conclusion of the hearing.  Based on the evidence and briefing presented by the parties, the Court makes the following findings of fact.

## II. Findings of Fact

On November 15, 2021, law enforcement officers obtained search warrant from a Hampton Magistrate Judge for the body of Jonathan Long (hereinafter "Arrest Warrant").  (ECF No. 47-4, 4-8.)  Prior to obtaining the warrant, law enforcement officers learned that Long had a criminal history that included convictions for fleeing from law enforcement. Additionally, law enforcement officers learned that Long had made statements that he (Long) was not going to go back to jail. (ECF No. 55; *see also* Mem. Opp'n. 1, 4.)  Prior to executing the Arrest Warrant, the officers surveilled the second-floor apartment where Long was believed to reside, observing his father K.L. enter and exit the residence multiple times during the day.  This residence was a second-floor apartment of a multi-unit dwelling located at 8 Cameo Drive in Hampton, Virginia.  At approximately 2:30 p.m. that same day, the officers went to the residence to execute the Arrest Warrant.  The officers knocked loudly and announced their presence.  (Mem. Supp. 1, ECF No. 39; Mem. Opp'n. 6, ECF No. 47.)  Officer body-worn camera footage recorded at the scene of the arrest reveals that multiple armed officers began to knock and announce their presence around time marker 14:35:12. (Videotape: Drug_5.mp4 (Government 2021); *see* ECF No. 55-1.)[1]  The same footage reveals that officers breached the door to the residence at or around 14:35:32; testimony presented by the Government at the suppression hearing confirms this timing.  (*Id*.)  Upon breaking

---

[1] During the suppression hearing held on October 13, 2022, the Government entered Officer McDonald's Body-Worn Camera footage (Drug_5.mp4) into evidence as Government Exhibit 1.  However, in the Government's written Response in Opposition to Defendant's Motion to Suppress (ECF No. 47), Government Exhibit 1 is a collection of excerpts from transcripts of a call between Long and a third party.  To avoid confusion, this Memorandum Opinion will refer to the transcript as Gov. Ex. 1, while referring to the officer body-worn camera footage as Videotape: Drug_5.mp4.

the door to the residence, officers tossed a "throwbot," a robotic camera used to help identify threats before law enforcement officers enter a dwelling.  After deploying this device, officers did not detect anything suspicious within the apartment.

After breaching the front entry door, officers demanded Long come outside with his hands raised, after which time co-defendant Quaneshia Saunders exited the apartment wearing a t-shirt and underwear.  Saunders appears on camera, having already exited the unit, at or around time marker 14:35:52 on the body camera footage entitled Drug_5.  (*Id*.)  Officers then directed Saunders down a flight of stairs, where she was debriefed by Officer Nicole Martinez (now employed as a Deputy United States Marshal).  Around 14:36:18, Defendant Long followed Saunders outside the residence with his hands over his head and was taken into custody without incident.  (*Id*.; Mem. Supp. 1.)  Officers separately asked both Long and Saunders if there were any other persons present in the apartment, to which they each responded that there were not. (Mem. Supp. 1; *see also* Videotape: Drug_5.mp4 at 14:36:11 and 14:37:10.)

During the hearing, Deputy U.S. Marshal Martinez credibly testified that Saunders, the leaseholder for the residence, verbally consented to a sweep of the residence as Defendant Long was led off the premises, around 14:38 on the video entitled Drug_5.  (Mot. Opp'n. 7.)  The protective sweep commenced at approximately 14:39:55. (Videotape: Drug_5.mp4 (Government 1 2021).)

When the officers entered the Cameo Drive residence, they observed bags of suspected narcotics, a "drug microwave," a loaded AR-15 assault rifle behind a bedroom door, and several loaded pistol magazines, all in plain view.  (Mem. Opp'n. 7; *see also* Gov. Ex. 3, ECF No. 47-3.) After finding these items in plain view, the officers returned to the Norfolk magistrate to obtain a search warrant to conduct a thorough search of the residence.  (Mem. Opp'n. 8; *see also* Gov. Ex.

4, ECF No. 47-4.)  Law enforcement officers conducted a thorough search of the apartment that same day, seizing the items observed earlier along with additional evidence such as firearms and drug paraphernalia. (*See* Gov. Ex. 4 at 11.)  That same day, Saunders and K.L., Long's father, both gave written consent for law enforcement to search their other residences.  (*See* Gov. Ex. 2, ECF No. 47-2.)  During a phone call placed to a woman named "Trina" while in in jail, Long expresses his understanding that Saunders consented to the search of the Cameo Drive residence and blames her for this decision.  (*See* Gov. Ex. 1, 7-8, ECF No. 47-1.)

### III. Legal Standard

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. Evidence gathered from an unreasonable search or seizure is inadmissible against the defendant.  *See Wong Sun v. United States*, 371 U.S. 471, 484-86 (1963).

On a motion to suppress, the burden is on the party who seeks to suppress the evidence. *United States v. Bello-Murillo*, 62 F. Supp. 3d 488, 491-92 (E.D. Va. 2014); *United States v. Seerden*, 264 F. Supp. 3d 703, 708 (E.D. Va. 2017).  Once the defendant has established a basis for the motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence. *Bello-Murillo*, 62 F. Supp. 3d at 492; *Seerden*, 264 F. Supp. 3d at 708.  "In the course of deciding a motion to suppress, the district court may make findings of fact, as well as rulings of law." *Bello-Murillo*, 62 F. Supp. 3d at 492 (citing *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir.2005)).

### IV. Discussion

A search conducted pursuant to valid consent is a well-recognized exception to the Fourth Amendment's warrant requirement.  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).  If

4

a defendant challenges the consent to search, the Court will determine, based on the totality of the circumstances, whether consent was knowing and voluntary, which the government must prove by a preponderance of the evidence. *United States v. Robertson*, 736 F.3d 677, 680 (4th Cir. 2013); *U.S. v. Mendenhall*, 446 U.S. 544, 557 (1980); *United States v. Buckner*, 473 F.3d 551, 553-55 (4th Cir.), *cert. denied*, 550 U.S. 913 (2007).   The Fourth Circuit has enumerated several factors to be considered in determining whether consent was free and voluntary.   These include "the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as officer's conduct; the number of officers present; and the duration, location, and time of the encounter)." *United States v. Elie*, 111 F.3d 1135, 1144 (4th Cir. 1997); *see also United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir. 1996).

The government is not required to show that a person was told or otherwise knew that he had a right to refuse consent.   *See, e.g., Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996).   Further, "neither the drawing of a gun by an arresting officer, nor the handcuffing of the accused establishes involuntariness in and of itself." *Elie*, 111 F.3d at 1145.   Consent given while detained based on reasonable suspicion, or while one is in custody, may nevertheless be voluntary. *Florida v. Royer*, 460 U.S. 491, 502 (1983); *United States v. Watson*, 423 U.S. 411, 424 (1976).   However, consent must be more than mere acquiescence to apparently lawful authority. *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968).   The Court must decide, given the totality of the circumstances, whether "a reasonable person in the suspect's position would have felt free to decline the officers' requests or otherwise terminate the encounter." *United States v. Sullivan*, 138 F.3d 126, 132 (4th Cir. 1998) (internal quotation omitted).

A third party with actual or apparent authority over a premises may validly consent to a search. *United States v. Matlock*, 415 U.S. 164, 170 (1974); *United States v. Bullard*, 645 F.3d 237, 243-44 (4th Cir.), *cert. denied*, 565 U.S. 925 (2011). Even if the consenting third party does not have actual authority to consent, the search remains valid if officers reasonably believe that the third party has authority to consent. *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990).  However, third party consent is not valid as to another resident who is physically present on the premises and objecting to the search.  *Georgia v. Randolph*, 547 U.S. 103, 120-21 (2006).

Although the body camera footage of Long's arrest does not capture Saunders' verbal consent to search the apartment, sufficient undisputed evidence demonstrates that she did validly give consent.  Current United States Deputy Marshal and then Detective Nicole Martinez testified that while the U.S. Marshals Service attempted to arrest Long, she spoke with Saunders and obtained Saunders' consent to search the residence.  Defendant Long does not deny that Saunders gave consent to Deputy Marshal Martinez.  Furthermore, Saunders later signed a written consent form authorizing law enforcement to search a second residence (Gov. Ex. 2, ECF No. 47-2), and the transcript of prison-based phone calls between Defendant Long and a female friend indicates that Long was also aware that Saunders gave verbal consent (Gov. Ex. 1, ECF No. 47-1).  At the hearing, no evidence was introduced to suggest that Saunders had any specific characteristics that would render this search involuntary, such as incapacity or particularly young age.

During the suppression hearing, counsel for Long mentioned but did not expand on an argument that Saunders' consent was invalid as to Long.  Saunders was the leaseholder for the unit searched, but it appears from her statements that Long lived there as well.  (*See* Def. Reply 2, ECF No. 48.)  Even if Long was not a full-time resident of the apartment, he was at least an overnight guest.  After executing the second search warrant, officers located several of Long's personal

6

effects, including medication in prescription bottles bearing his name, and wallets, credit cards, and keys to the apartment in the pocket of his pants hanging in the unit. (Gov. Ex. 4, 9, ECF No. 47-4.) An overnight guest may claim the protection of the Fourth Amendment, as can someone living in the apartment with the permission of the lessee. *See Minnesota v. Olson*, 495 U.S. 91, 98-99 (1990). The Court therefore concludes that Long did have a reasonable expectation of privacy in the place searched. Due to this status as a person with standing, the defense argues, Saunders' third-party consent was invalid without Long's agreement.

Long's assertion does not comport with the law. In *Georgia v. Randolph*, the Supreme Court made clear that, to defeat a co-tenant's consent to search, the defendant must be both present and objecting to the search. 547 U.S. at 114. The Fourth Circuit reaffirmed this principle in *United States v. Shrader*, 675 F.3d 300 (4th Cir.), *cert denied*, 568 U.S. 1049 (2012). Like in the present case, agents in *Shrader* arrived at the defendant's residence with a valid arrest warrant. When asked for his consent to search the premises, the defendant refused, was arrested, and was taken to jail. *Id*. at 304-05. After other agents removed Shrader, the agents who remained at the residence asked the defendant's aunt for consent to search. The aunt, who also lived at the residence, gave her consent. *Id*. at 305. The Fourth Circuit affirmed the district court's denial of defendant's motion to suppress based on *Georgia v. Randolph*, clarifying that although law enforcement officers cannot remove an objecting co-tenant solely for the purpose of avoiding his or her objection, a defendant's "subsequent arrest [per a valid arrest warrant] and removal from the premises cannot be considered a pretext for later seeking consent from [a third party]." *Id*. at 307.

Here, Saunders gave Deputy Marshal Martinez consent to search the residence as Long's arresting officers lead him down the stairs of the apartment complex. Long had already exited the place to be searched when his co-resident consented, and there is no claim or evidence that Long

expressly objected to the search during the short time he remained on the premises.  Therefore, the Court finds that Long was neither present nor objecting to the search of the apartment, and that Saunders' consent was constitutionally sufficient grounds for the officers to begin the search.[2]

## V. Conclusion

For the reasons stated above, the Court finds that the search of the Cameo Drive residence on November 15, 2021, was validly consented to and did not violate the Defendant's Fourth Amendment rights.  Therefore, the evidence produced by the search will not be suppressed.

An appropriate Order DENYING the Motion to Suppress shall issue.

_____ /s/ _____
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: October 28, 2022

---

[2] Because the Court finds that Saunders consented to the search of the residence and that the search was valid as to the property of Long, the Court does not have to reach the question of whether the protective sweep of the Cameo Drive residence, which occurred after Long was in custody and was outside the residence, was valid.

8